SOUTHWESTERN INDEMNITY COMPANY, Appellant,

v.

TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.

No. 3523.

Court of Civil Appeals of Texas.

Waco.

Jan. 30, 1958.

Rehearing Denied Feb. 27, 1958.

Beard, Kultgen & Beard, Waco, for appellant.

Burford, Ryburn & Ford, Clarence A. Guittard, Dallas, for appellee.

TIREY, Justice.

This is an appeal from an order sustaining the Texas Employers' Insurance Association's plea of privilege to be sued in Dallas County, the county of its residence.

As we understand appellant's brief, it assails the judgment of the trial court on the theory (1) that appellee is not a private corporation within the meaning of Art. 8308, Vernon's Ann.Civ.Stats., and (2) because under the terms of the statute creating the body corporate, defendant's status is that of a state agency, and by reason thereof it can be sued in any county in the State of Texas.

Appellee has addressed three counter points in reply to appellant's contentions. They are:

(1) "Appellee, Texas Employers' Insurance Association, although an agency created by statute for administration of the Workmen's Compensation Act, is, nevertheless, a legal entity or corporation separate and distinct from the State, and therefore, is a 'person' entitled to be sued in the county of its residence under the venue statute.

(2) "The trial court properly sustained the Association's plea of privilege, since there was no allegation in appellant's controverting plea that appellee was a resident of McLennan County, or that any exceptions to the general rule of venue in Article 1995 were applicable.

(3) "The trial court properly sustained the Association's plea of privilege because the stipulation that the Association was 'doing business in McLennan County' did not establish that it was a resident of that county."

A statement is necessary. The appellant brought this suit seeking indemnity for a settlement which it had made under a workmen's compensation policy. It alleged that the employee, on account of whose death the settlement was made, was a borrowed employee of an employer insured by appellee. Appellant went to trial on his First Amended Petition. In paragraph 4, we find substantially this allegation: That about January 31, 1956, The Service Mutual Insurance Company was the insurer under a certain policy of workmen's compensation insurance with respect to which B. G. Brown and J. A. Pruitt are the employers, said policy of workmen's compensation insurance covering the work being performed by said employers in the erection of a dam about seven or eight miles south of Eden in Taylor County, Texas; that Brown used and employed a certain DW-10 caterpillar machine in connection with work being there performed; that George Johnson of

Taylor County, Texas was employed by Brown and Pruitt to operate machines and equipment used in connection with such work; that T. B. Brown owned the machine and that B. G. Brown and Pruitt were using it under an oral lease agreement; that the oral lease agreement required T. B. Brown to do any major repairs which might be needed for such equipment; that on or about January 31, 1956, the front spring on the caterpillar machine was broken; that pursuant to his agreement that he would make major repairs on the machine in question, T. B. Brown directed his employee, A. W. Glover, to go to the place where the machine was located and to replace the front spring; that this was a job of such difficulty that Glover was unable to do it alone; that he procured the help of George Johnson and other persons to assist him in the work, and in the course of the work, the front end of the frame of the caterpillar machine was raised higher than the axle; that George Johnson had crawled under the machine and was working on the spring; that in the course of this work it was necessary for Johnson to place his head between the frame and the axle, and that while his head was in this position, the caterpillar machine shifted on the jack, and the frame came down against the axle, crushing George Johnson's head and causing severe injuries, from which he died.

The plea of privilege filed by appellee conforms to Rule 86, Texas Rules of Civil Procedure. On the trial of the case, appellant introduced the plea of privilege filed by appellee in toto, and stated it was "for the purpose of establishing that the defendant is the Texas Employers' Insurance Association, or agency, of the State of Texas, established by the Workmen's Compensation Law for the administration of the Act." It was stipulated that the Texas Employers' Insurance Association has its principal office and place of business in Dallas, Texas. No other testimony was tendered. Appellant says the real question before us is, "Did the trial court err in sus-

taining the plea of privilege of Texas Employers?" We are in accord with this view and think the answer is "No", for reasons which we shall briefly enumerate.

Going back to the Acts of the Legislature specifically creating the Texas Employers' Insurance Association, we find that Art. 8308, Vernon's Ann.Civ.Stats., provides in part: "Sec. 1. The 'Texas Employers' Insurance Association' is hereby created a body corporate with the powers provided in this law and with all general corporate powers incident thereto."

Section 2 provides that the "Governor shall appoint a board of directors of the association consisting of twelve members, who shall serve for a term of one year or until their successors are elected by ballot by the subscribers at such time and for such term as the by-laws shall provide. At any annual meeting of subscribers the number of directors may be increased or decreased by resolution duly recorded in the minutes of such meeting."

Section 3. "Until the first meeting of the subscribers, the board of directors shall have and exercise all the powers of the subscribers and may adopt by-laws not inconsistent with the provisions of this law, which shall be in effect until amended or repealed by the subscribers."

Section 4: "The board of directors shall immediately choose by ballot a president, who shall be a member of the board, and shall elect a secretary, a treasurer, and such other officials as the by-laws may provide."

Section 5: "Seven or more directors shall constitute a quorum for the transaction of business. Vacancies in any office may be filled in such manner as the by-laws shall provide."

Section 6: "The board of directors may appoint an executive committee which may have and exercise all of the powers of the board of directors except when the board is in session."

Section 7: "Any employer of labor in this State who may be subject to the terms of this Law or to the terms of the 'Longshoremen's and Harbor Worker's Compensation Act' of the United States may become a subscriber to the Association."

Section 8: "In any meeting of the Subscribers each subscriber shall have one vote, and if a subscriber has 500 employees to whom the association is bound to pay compensation he shall be entitled to two votes and he shall be entitled to one additional vote for each additional 500 employes to whom the association is bound to pay compensation, but no subscriber shall cast, by his own right or by right of proxy, more than 20 votes."

Section 13 provides: "The board of directors may distribute the subscribers into groups for the purpose of segregating the experience of each such group as to premiums and losses, and for the purpose of determining dividends payable to and assessments payable by the subscribers within each group, but for the purpose of determining the solvency of the association, the funds of the association shall be deemed one and indivisible. The board of directors shall have power to re-arrange any of the groups by withdrawing any subscriber and transferring him wholly or in part to any group and to set up new groups at its discretion."

Section 16 provides: "The board of directors may, from time to time, by vote fix the amount to be paid as dividends to its subscribers, in such manner and under such plan as shall be determined by said directors in the exercise of their powers and discretion. No such dividend shall take effect until the same has been approved by the Board of Insurance Commissioners, and no such dividend shall be approved until adequate reserves have been provided by the Association, said reserves to be computed on the same basis as required for other classes of stock or mutual companies, reciprocals, inter-insurance exchanges, or Lloyds' associations under the laws of this State and applicable rules of the Board of Insurance Commissioners. Dividends and assessments may be fixed by and for groups, but the entire assets of the Association, including the liability of the subscriber to assessment within the limits fixed by the by-laws or by special agreement in writing as authorized, shall be subject to the payment of any approved claim for compensation against the Association."

It is obvious from the study of each of the sections of Art. 8308, Vernon's Ann. Civ.Stats., that the Legislature, in creating the framework for the Association, did not intend to make it an agency of the State, in the sense of the Highway Commission or the Insurance Commission, or any other department of State; but, on the contrary, created the Association a body corporate with the power to sue and to be sued; to have subscribers who had authority by virtue of being such subscribers to elect its Board of Directors and provide that its Board of Directors may select its President, provide how such body corporate shall handle its financial affairs, but in no sense provides that the earnings of the body corporate shall belong to the State, but, on the contrary, such earnings belong to the Corporation. The Association created by the statute has all the essential attributes of a corporation. It has its subscribers who are in fact its stockholders, but the corporation is a distinct, legal entity, separate and apart from its subscribers, since the corporation may own property and may sue and be sued in its own name. The statute provides the means and manner by which the corporation shall have perpetual succession. Its subscribers or members elect a Board of Directors which has full control over its affairs. Such members have no liability for the debts of the corporation, except to the levy of such assessments that may be made under the express provisions of the Act. Moreover, the members may receive dividends from the surplus funds earned by the corporation, as and when the Board of Directors may determine. It seems to us that the statute has provided that the Associa-

tion has every essential characteristic of a corporation, and certainly has control of its property through its duly elected officers and its Board of Directors.

Getting back to the sole question at hand, we think we must bear in mind that appellee filed a statutory plea of privilege denying that it was a resident of McLennan County, and denying that any exception to the general venue statute was applicable. When appellee filed such plea, it was entitled to have such plea sustained unless the plaintiff assumed the burden of filing a controverting affidavit and pointing out in such controverting affidavit why and how it could maintain venue in McLennan County where the suit was pending, and it was the bounden duty of the plaintiff to point out the particular grounds relied on to maintain venue, and it had to support such pleading by proof on the venue hearing. We have previously set out substantially the controverting affidavit of the appellant. It certainly points out no exception to the venue statute. As we understand the appellant's controverting affidavit, it merely denies the statements contained in the appellee's plea of privilege and says they are not true. Appellant certainly offered no proof that the statements in the appellee's plea of privilege were not true, but, on the contrary, we think the facts show without dispute that the appellee is a body corporate and that its principal place of business and its domicile is located in Dallas, Dallas County, Texas. Certain it is that we have shown by the provisions of the statute relating to the creation and control of the appellee that it is not a State agency, as contended by appellant; but, on the contrary, it is a profit making and sharing corporate body. Finally, we think the trial court's view in sustaining the plea of privilege is ruled by the opinion in Texas Employers' Ins. Ass'n v. Collier, Tex.Civ.App., 77 S.W.2d 878, 879. As we understand the opinion in the foregoing case, it was the duty of the plaintiff to point out in its controverting affidavit the exception to the venue statute under which it sought to hold venue in the county where suit was brought. The opinion shows that this the plaintiff wholly failed to do. Then the court says: "The burden resting upon appellee was to establish, not that appellant had the elements of a private corporation, but that it is, in fact, such a corporation. The cases above cited are authority for the holding that it is not a private corporation. We deduce from the authorities that it is a public, or quasi public corporation. Certainly it is a corporation of some character. From this it follows that the plea of privilege should be sustained." In view of the foregoing statement and result indicated by the opinion, appellant had the duty of setting up the exceptions to the venue statute on which it relied to maintain venue in McLennan County, and having failed so to do, the trial court properly sustained appellee's plea of privilege and transferred the cause to one of the district courts of Dallas County.

Going back to Art. 1995, Vernon's Ann. Civ.Stats., the provision in the statute to the effect that "no person who is an inhabitant of this State shall be sued out of the county in which he has his domicile except in the following cases * * *", has been given a very liberal construction by our courts. In the Collier case, supra, we think the opinion assumed that the Association is a "person" within the venue statute, because the court sustained its plea of privilege to be sued in the county of its residence. This court is in accord with such view. Moreover, we think that the court's view in the Collier case is in accord with the holding of our Supreme Court in City of Tahoka v. Jackson, 115 Tex. 89, 276 S.W. 662, 663, where the court held in effect that "the word 'person', as used in this article, must, under art. 5504 (now Art. 23) be construed to include corporations." See also Texas Employers' Ins. Ass'n v. City of Dallas, Tex.Civ.App., 5 S.W.2d 614; also Jefferies v. Dunklin, 131 Tex. 289, 115 S.W.2d 391; Victoria Bank & Trust Co. v. Monteith, 138 Tex. 216, 158 S.W.2d 63; Jaques Power Saw Co. v.

Womble, Tex.Civ.App., 207 S.W.2d 206; Miller v. Davis, 136 Tex. 299, 150 S.W.2d 973, 136 A.L.R. 177. Since the Legislature created the appellee a body corporate, and authorized it to sue and be sued and manage its affairs as a corporation, it certainly has the status of a person of some description under all of the Texas decisions, and we think that it is entitled to claim its privilege to be sued in the county of its residence absent a showing of some exception contained in the venue statute aforesaid.

We are in accord with the action of the trial court. Accordingly, the judgment of the trial court is in all things affirmed.